THE BALTIMORE AND OHIO RAIL ROAD COMPANY, and others, *vs.* WILLIAM W. GLENN, and others.

*Corporations—Lex loci contractus—The rule of Comity —How foreign laws are to be proved—Statute of 13th Elizabeth, ch. V.—Validity of a Creditor's deed under the laws of Virginia.*

A corporation can have no legal existence, out of the boundaries of the sovereignty by which it is created. It exists by force of the law; and where that ceases to operate and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty. But while it must live and have its being in that State only, there is no insuperable objection to its power of contracting in another. Being an artificial person, it may like natural persons, through the intervention of agents, make contracts within the scope of its limited powers in a State where it does not reside: provided such contracts are permitted to be made, by the laws of the place.

Corporations, unlike natural persons, cannot change their domicil; they have a stationary habitation and can only have transactions from their home, through their agents.

Where a corporation derives its charter from the State of Virginia alone, its domicil is in that State exclusively. It cannot reside here and in Virginia at the same time under the one charter.

The validity of a deed made by a corporation, created by the laws of Virginia, must be determined by the laws of that State; if it be legal there it is so here, unless it violates good morals, or is repugnant to some law or policy of this State. If it be fraudulent and void according to the laws of Virginia, the fraud attaches to it here, and vitiates it.

It is a general principle, admitting of few exceptions that in construing contracts made in a foreign country, the Courts are governed by the *lex loci*, as to the essence of the contract; that is, the rights acquired and the obligations created by it.

The rule of comity adopts the law of the country where the contract is made, in determining its nature, construction and validity, unless such construction is *contra bonos mores*, or against some positive law of the place where the contract is sought to be enforced.

Baltimore and Ohio Rail Road Company, *et al. vs* Glenn, *et al.*

No right can be derived under any contract made in express opposition to the laws of the place in which such contract is made.

An assignment of personal property within our limits belonging to parties abroad, may be made according to the foreign law, where our own citizens in assigning similar property, are required to conform to our laws regulating such assignment.

The unwritten law of a foreign country is a fact to be proved, as other facts, by the testimony of experts; the statutory law, by the law itself, or an exemplified copy.

A deed executed in Virginia by the National Express and Transportation Company, purporting to convey all of its property to trustees, for the benefit of its creditors, and at the same time, among other things, reserving to itself the enjoyment of the property under the title of the trustees, from the 20th of September to the 1st of November, following, and longer if the trustees should not be required to take possession by one or more of the creditors thereby secured; requiring the trustees to pay out of the trust fund, all debts that should become due from the grantor to its officers and agents, from the said 20th of September, to the 1st of November, following, while it should be using its property under the first reservation; and further requiring the trustees to pay out of the trust funds all debts which the grantor might incur to Rail Road Companies for transportation during that period, over and above the net receipts for such transportation; and reserving to the grantor absolutely all tolls and compensation for the transportation of express matter, not then delivered to consignees, nor transported, although under existing contracts is not upon its face or by its provisions, invalid according to the laws of Virginia.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed in the Circuit Court of Baltimore city, on the 6th of October, 1866, by the appellee, against The National Express and Transportation Company, John Blair Hoge, John J. Kelley and C. Oliver O'Donnell, Trustees of said Express Company, the Baltimore and Ohio Rail Road Company, and the Bank of Commerce, on behalf of himself, and such other creditors of the said Express Company, as might become parties to the suit, and agree to contribute to the costs of prosecuting the same. The bill charged that the National Express and Transportation Company, a body politic and corporate of Virginia, by deed dated the

20th of September, 1866, conveyed to the said John Blair Hoge, John J. Kelley and C. Oliver O'Donnell, all the estate, property, rights and credits of every kind, including calls or assessments on stock of the said company, in trust, among others, that the trustees should permit the grantor to remain in the possession and use of all the property therein granted or assigned, except debts, claims and moneys, payable, until the first day of November, 1866, and thereafter until the trustees should be requested by one or more of the creditors, secured by said deed, and whose debt or debts should then be due, to take possession of such property; with authority to the trustees to take possession thereof, at any time after the date of the deed, if requested so to do by the board of directors of the said grantor; and further, that out of the trust funds, the trustees should pay all debts then due, or which should become due from the grantor to its officers or employees for their services as such, on or before the said first day of November, 1866, or such previous time as the trustees should be required to take possession of the property conveyed thereby; and further that the trustees should pay out of the trust fund, in ratable proportion the two debts due by the grantor; one to the Baltimore and Ohio Rail Road Company, and the other to the Bank of Commerce; and further, ratably, the balance of all debts for which the grantor should become liable to any rail road companies for transportation of express matter, from the date of said deed to the said first day of November, 1866, over and above the net receipts for such transportation; the said grantor reserving to itself all tolls and compensation accruing for the transportation of express matter, not yet delivered to consignees nor yet transported, although under existing contracts.

The bill further charged that the said express company was largely indebted to the said Glenn, for money loaned by him to said company, as also for obligations incurred by him for said company; and further, that an agreement was entered into between him and said company, on the 9th August, 1866,

whereby upon certain conditions, he agreed to extend the time for the payment of its indebtedness to him for money loaned; that said company did not comply with any of said conditions; and that the execution of said deed of trust was a violation of said agreement, and should not be permitted to stand to the injury of the rights of the said Glenn. The bill further charged that the said Glenn had sued out a writ of attachment, against said company in the city of Baltimore and in the District of Columbia, and caused the same to be levied upon the property of said company, but that the property so levied upon was wholly inadequate to satisfy his claim against said company; and that the said deed of trust was fraudulent and void, and ought to be so declared. The bill asked for an injunction to restrain the express company and the trustees from disposing of, or conveying any of the property embraced in the said deed of trust, and from applying any part of said property to the purposes mentioned in said deed, or from suffering or permitting said property to be used by said company, in the manner provided in said deed. The bill also asked for the appointment of a receiver. An injunction was issued in conformity to the prayer of the bill, on the 6th of October, 1866.

The National Express Company and the trustees filed their answers on the 13th November, following, and moved to dissolve the injunction, the latter adopting the answer of the former, as part of their answer.

The Express Company, among other things, admitted that it was a body politic and corporate, chartered, organized and existing by virtue of the laws of the State of Virginia, and of no other State; that it was indebted to the said Glenn for money lent to it, and paid for it to the amount of twenty-one thousand and five hundred dollars, with interest, as alleged in the bill; but whether the same or any part thereof was then due, or at the time when the suit was instituted, or when the appellee sued out his attachment, against the respondent in Baltimore, it submitted to the judgment of the Court; it admitted

the execution of the deed of trust of the 20th of September, 1866, but denied that it was done with any design to delay, hinder or defraud creditors or with any other fraudulent purpose whatever; on the contrary, that it was done with a *bona fide* purpose to make the most effectual and equitable provision for the payment of all its creditors that was then practicable; it insisted that the deed itself, if considered with reference to the nature and necessary operation of an Express Company chartered in Virginia, and carrying on an express business in Virginia, Maryland and other States, would appear on its face to have a purpose consistent with justice and the rules of law in all its provisions; that the preference given to employees of the company, so far from indicating a fraudulent purpose, was justified by equity; that, given to the Baltimore and Ohio Rail Road Company and the Bank of Commerce, was a more convenient substitute for a preference which they already held, and in fulfilment of a pledge given to them; the provision for paying employees and rail road companies for services to be rendered during a short period after the deed was made, was a necessary part of the provisions for the winding up of the affairs of the company in a manner beneficial to its creditors, and allowing the stockholders an opportunity to pay them speedily by hastening the discharge of their own obligations or otherwise; while the sums due and to become due from the stockholders were immediately appropriated by the deed to the use of the creditors; the possession of the property was reserved for a brief period to the company as part of the same general design; that the deed was not made in contemplation of insolvency, nor was the respondent then insolvent. The total amount of its liabilities was about two hundred and seventy-five thousand dollars or rather less. It owned property which had cost over two hundred thousand dollars, and which, unless forced to sale under unfavorable circumstances, was worth that sum. There was due to it from stockholders in calls or assessments already made, over two hundred thousand dollars, the most of which was due

from solvent persons, and there remained eighty per cent. or over three millions of dollars, liable to be called for on the subscription of stock; it further alleged that the said deed of trust was valid, and would have been valid under the laws of Maryland, if it had been made in said State by a corporation of said State, not only as between the parties thereto, but as against the appellee and all other persons claiming adversely to the same; that the said deed was executed in Virginia, that it conveyed no real estate except one small parcel in that State; that it was duly recorded according to the laws of that State before the appellee sued out said attachment; that neither said deed nor any of its provisions, parts or clauses, was contrary to the laws which were in force in the State of Virginia, when it was made, and ever since, but according to those laws the said deed was and is valid and effectual to all intents, not only as between the parties thereto, but as against creditors and all other persons; it further insisted that in the Courts of Maryland all questions respecting the legality, validity, operation and effect of said deed as to personal property thereby conveyed or assigned, or purporting to be conveyed or assigned, should be decided according to the laws of Virginia, even though such property may have been found and attached in this State at the suit of a citizen of Maryland, and that the title of the assignees or trustees named in said deed is superior to any lien, right or claim of the appellee by virtue of his attachment or otherwise; that the making of said deed was not inconsistent with the rights of the appellee under the agreement of the 9th of August, 1866, nor with any rights which he had as a creditor at or before the making of that agreement.

The trustees, in their answer, alleged that they had been prevented from proceeding effectually to execute the trusts confided to them by the deed of trust, in consequence of the injunction issued in this cause, and legal proceedings elsewhere; but asserted their readiness to carry the same into execution whenever permitted. They insisted that the ap-

pointment of a receiver was wholly unnecessary for any purpose; that while a receiver appointed in this State would have no authority to act in other States, any order depriving them of power to execute the trust confided to them in other States, would be the probable cause of heavy losses to the trust, would destroy the only means of winding up the affairs of the Express Company under a single administration, extending to all the property and all the creditors of the company, to all the liabilities of stockholders, and would delay indefinitely the final settlement of its affairs. Glenn moved for the appointment of a receiver, and by consent of the solicitors of the respective parties, said motion as also the motion for the dissolution of the injunction, were set down for hearing on the same day. The Baltimore and Ohio Rail Road Company had not then answered the bill, but its solicitor was notified of the motion, and declined to take part in the proceedings at that time. The Court on hearing the two motions, passed an order on the 15th of December, 1866, continuing the injunction and appointing Thomas G. Pratt, receiver. Sometime afterward, the Baltimore and Ohio Rail Road Company filed its answer, in which, among other things, it alleged that the Express Company was indebted to it in a large amount for the transportation of the express matter of that company, and insisted that the deed of trust executed by the Express Company was, according to the laws of Virginia, effectual to convey all the estate, property and effects which it purported to convey, and there was nothing on the face or in the provisions thereof, which according to the laws of said State, rendered it void, or in any manner fraudulent, invalid or ineffectual as against the creditors of the Express Company, or any other person whomsoever, and (the grantor having no real estate in Maryland,) it was therefore effectual and valid in said State, and elsewhere. It renewed the motion to dissolve the injunction and discharge the receiver. The Bank of Commerce filed its answer, substantially acquiescing in the prayer of the bill. After the filing of the answer of the Baltimore and Ohio Rail

Road Company, commissions were issued, and testimony was taken thereunder, on both sides. The motion of the Rail Road Company was, by an order of the 3d of May, 1867, overruled. The receiver, in the discharge of his duty, sold all the property of the Express Company which came to his hand, and made report thereof to the Court, and various proceedings were had, from time to time, in reference thereto.

On the 11th of May, 1867, the Baltimore and Ohio Rail Road Company and the trustees Hoge and O'Donnell, appealed from the order of the 6th of October, 1866, granting an injunction, from the order or decree of the 15th of December, 1866, refusing to dissolve said injunction, continuing the same and appointing a receiver, from the order of the 3d of May, 1867, refusing to dissolve said injunction and to discharge said receiver, and from each and all the orders and decrees theretofore made, so far as an appeal from the same might be lawfully included in or united with an appeal from the orders particularly mentioned, or might have determined any question of right, and directed an account to be stated on the principle of such determination, as also from the order of the 21st of January, 1867, requiring W. H. Perot, the President of the Express Company, and the trustees, respectively, to execute deeds to the receiver of all the property, &c., of said company, and of the 5th of February, 1867, directing said W. H. Perot to cause to be purchased a seal of said company, and affix the same to the deed which he was previously ordered to execute, &c.

The cause was argued before Bowie, C. J., Bartol, Weisel and Crain, J., and a re-argument was ordered by the Court, and the case was again argued before Bartol, C. J., Nelson, Brent, Stewart, Grason and Robinson, J.

*John H. B. Latrobe* and *I. Nevett Steele,* for the Baltimore and Ohio Rail Road Company:

The principal question in this case is, whether a deed of trust by the National Express and Transportation Company is valid

as against creditors, and particularly as against the appellee, Glenn? It is not alleged, nor pretended, that the deed was made with a fraudulent intent. Still less is it pretended, that the trustees, or the creditors secured, were privy to a fraudulent intent. But it is alleged that the deed is invalid by reason of certain provisions in it—fraudulent in law—fraudulent and void on its face. If it had been made with a fraudulent intent, in which the grantees and beneficiaries were implicated, it would be invalid according to the law of every State and every country. But the objections to the deed are not grounded on actual fraud alleged, but on certain rules of law which its provisions are said to violate. The deed was made in Virginia, by a corporation chartered by that State only, and operated in Maryland on personal property alone. The questions as to the validity of the deed, and its efficacy to transfer personal property every where, must be determined by the law of Virginia, that being both the place of the grantor's domicil and the place where the deed was made. *Wilson & Co. vs. Carson & Co., Garn. of Webb, Maxcy & Co.*, 12 *Md. Rep.*, 54; *De Sobry vs. De Laistre*, 2 *Har. & John.*, 191; *Black vs. Zacharie*, 3 *Howard*, 483, 514; *Story's Conf. of Laws*, secs. 263, 362, 376, 379, 380, 383, 411; *Dundas vs. Bowler*, 3 *McLean*, 397; *United States vs. U. S. Bank*, 8 *Rob. La. Rep.*, 262, 402, 414; *Richardson vs. Leavitt*, 1 *La. Annual Rep.*, 430; *Burlock vs. Taylor*, 16 *Pick.*, 335; *Trasher vs. Everhart*, 3 *G. & J.*, 244; 2 *Kent's Comm.* 254.

It has been said that the rule above relied on is subject to the exception, that where the transfer is opposed to the laws of the country where it is sought to be enforced, the Courts of such country are not bound to give it effect against the conflicting rights of its own citizens.

This exception has been admitted in terms by so many jurists, that its existence as part of the law cannot well be denied. But it has received so little support and illustration from actual adjudications, that it is extremely difficult to discern the cases to which it is applicable.

Baltimore and Ohio Rail Road Company, *et al. vs.* Glenn, *et al.*

Very little room seems to be left for its practical application by the following decisions, in which it has been held that if such a deed is valid in Virginia, (for example,) the title it confers is in Maryland superior to the right of an attaching creditor, though he is a citizen of Maryland, and the property, being personal, is in Maryland. *Wilson & Co. vs. Carson & Co., Garn. of Webb, Maxcy & Co.*, 12 *Md. Rep.*, 54; *Black, et al. vs. Zacharie & Co.*, 3 *Howard*, 483, 514; *Houston vs. Nowland*, 7 *G. & J.*, 480; *Speed vs. May*, 17 *Penn. St. R.*, (5 *Har.*,) 91; *Law vs. Mills*, 18 *Penn. St. R.*, (6 *Har.*,) 185; *Brashear vs. West, et al.*, 7 *Pet. S. C. R.*, 608; *Greene vs. Mowry*, 2 *Bailey*, 163; *West vs. Tupper & Kimball*, 1 *Bailey*, 193; *Bruce vs. Smith*, 3 *H. & J.*, 499; *Bank of the United States vs. Lee, et al.*, 13 *Pet. S. C. R.*, 107; *De Lane, et al. vs. Moore, et al.*, 14 *How. S. C. R.*, 266; *Sanderson vs. Bradford*, 10 *New Hamp.*, 260; *Bholen, et al. vs. Cleveland, et al.*, 5 *Mason*, 174; *Newman vs. Bagley & Tr.*, 16 *Pick.*, 570.

Whatever may be the effect of the exception now under consideration in other cases, it cannot vary the general rule, that the law of Virginia is to prevail in this case where two of the trustees and the principal creditors preferred in the deed of trust, are citizens of Maryland. *Means vs. Hapgood, and Trustee*, 19 *Pick.*, 105.

Moreover, this exception, which is designed to protect citizens of Maryland against transfers made in other States, is confined to property in Maryland. That property was attached at the suit of Glenn before he brought this suit in equity. As to that property the suit in equity was unnecessary and could not be maintained. *McPherson vs. Snowden*, 19 *Md. Rep.*, 233.

If there were any property, debt or claim in Maryland on which the attachment had not been actually levied, Glenn had it in his power to secure the whole by an attachment at law. His bill in equity could only have been necessary to reach property not in Maryland. For that purpose he asked

the Court to decide, and the Court did decide that the deed of trust was void, not only as to property in Maryland and as against creditors residing in Maryland, but as to all property and in all places.

Now, if a deed which transfers property in several States is to be pronounced invalid by a Court of Maryland as to all the property in all the States, it should be done upon grounds which, according to established principles, will lead to the same decision in every State. That is impossible in this case, unless the law of Virginia is accepted as the rule of decision. Otherwise there can be no certain rule which can be known and applied everywhere.

If the validity of the deed is to be determined according to the law of the place where it was made, or the law of the grantor's domicil, and if the domicil of a corporation is invariably taken to be the State in which it has been created, then there is a criterion which can be known and applied in all countries alike.

But, if a Court in Maryland may apply the law of this State to invalidate such a deed as to all property in other States, merely because the corporation has transacted a certain part of its business in Maryland, no Court of another State will follow the same rule. In some other State where the company has done business, the law of *that* State may be applied. The general principle which is designed for the uniform security of rights and the promotion of commerce, will be defeated in all cases where the domicil of a corporation gives the law, unless it is constantly maintained that, for such a purpose, a corporation can have but one domicil, and that the place of its creation. Such is the law. *Bank of Augusta vs. Earle,* 13 *Pet.,* 588; *Ohio and Mississippi Rail Road Co. vs. Wheeler,* 1 *Black,* 286.

In this case it is agreed that "the said company is a corporation chartered by the State of Virginia, and not by any other State; ever since it was organized the office of its President has been kept at Richmond."

The appellee, Glenn, in the Court below in his bill styled it "a body politic and corporate of the State of Virginia;" he had sued out an attachment against it as a non-resident of Maryland. All the proceedings of the Board of Directors and the Stockholders show that they were careful to adhere to Richmond, Virginia, as the lawful residence or domicil of the company.

When the place of performance is to give the law, it is always presumed that a written contract is to be performed where it was made, unless another place is appointed on its face. *De Sobry vs. De Laistre,* 2 *H. & J.,* 220; *Speed vs. May,* 17 *Penn.,* 95.

Now, either Virginia must be regarded as the sole domicil of the corporation, to the exclusion of Maryland, or Maryland must be regarded as the sole domicil to the exclusion of Virginia, in order that one law of the domicil may accompany the deed into all parts of the world. The law of Maryland cannot; the law of Virginia must.

If the place where the deed was executed had been out of Virginia, it might be necessary to determine whether, in this case, the law of that place should prevail (as probably it ought) over the law of the domicil. But the domicil and the place of making the deed being the same, clearly the law of that place must prevail. Such is the effect of the authorities before cited.

The proper mode of proving the law of Virginia is by depositions of persons skilled in that law. *Wilson & Co. vs. Carson & Co., Garn. of Webb, Maxcy & Co.,* 12 *Md. Rep.,* 54.

It is proved by the depositions of several eminent lawyers of Virginia, that, according to the law of that State, this deed is valid. If this deed is to be judged by the law of Maryland, still it is valid. It exacts no release from any creditor. This distinguishes it from the deeds which (being somewhat like it) have been held invalid by the Courts of Maryland, except that in *Inloes, Garn. of Turnbull & Co. vs. American Exchange Bank,* 11 *Md. Rep.,* 173, and there the Court said that the

question as to the effect of not requiring a release was not raised, and that, in this respect, the decision was not to be taken as a precedent. In *Green and Trammell, vs. Trieber,* 3 *Md. Rep.,* 11, the creditors were required to give up their right to sue the debtor for a long time; and this in principle, was equivalent to requiring a release.

See the principle explained in 6 *Watts & Serg.,* 311.

In Maryland, the deeds which have been held void because they reserved an interest to the grantor, exacted releases. *Sangston vs. Gaither,* 3 *Md. Rep.,* 40; *Malcolm, Trustee, vs. Hodges,* 8 *Md. Rep.,* 418.

Deeds of trust or general assignments have not been held invalid where no creditor was required to release or to relinquish any existing right, unless there was actual fraud. *Berry vs. Matthews & Chapman,* 13 *Md. Rep.,* 537; *Price, Garn, of Wilson, vs. De Ford,* 18 *Md. Rep.,* 489.

Even in deeds exacting releases, some of the clauses objected to in this deed have been sanctioned in Maryland.

As to preferences among creditors: *Sangston vs. Gaither,* 3 *Md. Rep.,* 40; *Malcolm, Trustee, vs. Hodges,* 8 *Md. Rep.,* 418; *McCall, et al. vs. Hinkley & Woodward,* 4 *Gill,* 128; *Kettlewell vs. Stewart,* 8 *Gill,* 472; *Beatty, Trustee of Davis, vs. Davis, et al.,* 9 *Gill,* 211, 222; *The State of Maryland, vs. The Bank of Maryland,* 6 *G. & J.,* 205.

As to the authority of trustees to sell on credit, &c. *Maennel, et al. vs. Murdock, et al., Garn. of Falconer & Haskell,* 13 *Md. Rep.,* 164; *Farquharson vs. Eichelberger & Trust, Garn. of Muncks,* 15 *Md. Rep.,* 63.

Finally, where the provisions of a deed of trust, even though it is a general assignment and exacts a release, appear to have been fairly designed to facilitate the winding up of an extensive and complicated business, and in that way *may* be beneficial to creditors, they do not invalidate the deed, although they are such as would otherwise be more objectionable than any in the deed now in question. *American Exchange Bank vs. Inloes, Garn. of Turnbull &*

Co., 7 *Md. Rep.*, 380; *Inloes, Garn. of Turnbull & Co.*, vs. *American Exchange Bank*, 11 *Md. Rep.*, 173; *Marks, et al. vs. Hill, et al.*, 15 *Grattan*, 400.

The decisions in Maryland on this class of questions differ somewhat from those in Virginia, and far more from those in some other States; yet they all proceed on the same general ground — the same statute against fraudulent conveyances.

This kind of diversity in the judicial exposition of the law does not constitute that contrariety of public policy which is alluded to, when it is said, that a foreign law shall not prevail in our Courts over the positive legislation or policy of our own State. It is precisely in relation to this very diversity that many of the cases which have been cited apply the doctrine that the validity of a deed or contract must be determined, not according to the *lex fori*, but according to the *lex loci contractus* or the *lex domicilii*.

But supposing the deed in question to be void, the decrees of the Court below are erroneous. They not only appointed a receiver without necessity, but they attempted to vest in him the property of the company in other States, requiring the trustees to bring the property from other States into the jurisdiction of the Court, (which they could do only by virtue of the deed of trust;) annulling the deed of trust and commanding the trustees to convey all the property to the receiver; commanding the company also to convey the same property to the receiver, and obliging an officer (or former officer) of the company to make that conveyance without authority from the corporation, &c. Now, if the deed of trust is invalid in Maryland, but valid elsewhere, the error and the mischief of such proceedings are self-evident. A doubt whether the deed might be held valid elsewhere should have restrained the Court from attempting to control the property in other States if it had the power.

But it could confer no authority on a receiver beyond its own jurisdiction. *Booth vs. Clark*, 17 *Howard*, 322, 337.

To supply this defect of authority, the Court attempted to invest the receiver with the *title* to the property, so that when he would present himself in a Court of another State demanding any of the property he could prove a *title* not depending on the authority of a Maryland Court, but regularly deduced from the lawful owner—the corporation.  The Court proceeded on the doctrine that parties subject to the jurisdiction of a Court of Equity *may* be compelled by the Court to convey property *belonging to them* in another country.

But, unless they have a lawful right to make the conveyance—so that, if they made it voluntarily, it would be effectual—the doctrine has no application; nor can any practical object be obtained by compelling them to convey.  Supposing these trustees to have conveyed all the property to the receiver, either voluntarily or on compulsion, no title in the receiver could be shown in another State, because it would appear there that the conveyance to him was not authorized by the deed of trust—in other words, that his grantors had no right to convey to him.  This defect could not be supplied there by invoking the authority of a Maryland Court; for, if that Court, in directing the conveyance, also conferred the power to convey, the title would depend on the authority of the Court, and would be no better than the title which the Court could confer on the receiver without a conveyance.  But, if the order of the Court would avail to eke out the title in another State, the production of its decrees would show that it had annulled the deed of trust, leaving the trustees no title to convey.  Neither could the corporation make a valid conveyance to the receiver, having already conveyed to the trustees; and this difficulty could not be removed by any means that would avail beyond the jurisdiction of the Court.  The irregular and futile attempts of the Court to procure a deed from the corporation to the receiver, only served to illustrate the fallacy of the idea on which the Court proceeded from the beginning, in attempting to control the property beyond its jurisdiction.  If the

Court having the trustees before it, had proceeded to *enforce* the deed of trust, it might have compelled them to make any transfer or disposition of property in other States, that was necessary for *the fulfilment of the trusts.* It could compel them to exercise powers which they had, but could not (out of its jurisdiction) confer on them a power which they had not; nor could it, through them, control property abroad in any way except according to the deed of trust.

For these and other reasons it was improper for the Court to attempt to control the property in other States, as it did by its orders. *Livermore, et al. vs. Jencks, et al.,* 21 *Howard,* 126; *Wales vs. Alden and Tr.,* 22 *Pick.,* 245; *Gardner vs. Lewis,* 7 *Gill,* 398.

*\*Charles W. Russell,* for Hoge and O'Donnell, Trustees of the Express Company.

It will suffice for these appellants to show that the just deductions of law, to be made from the decisions of the Courts in Virginia, are in harmony with the testimony of the witnesses who affirmed that the deed of the Express Company was legal and valid, according to the law of Virginia. One of the witnesses who testified as to the validity of this deed, stated in his deposition that the Courts of Virginia "are disinclined to establish artificial or arbitrary tests of good faith, or to extend constructions which establish fraud in law where no fraud in fact appears. And they allow a liberal and enlightened discretion in all matters tending to forward the purposes of a trust, regard being had to the character and situation of the property and to all the circumstances under which the conveyance is made."

---

*\* The following may be regarded as little more than a sketch of the very able argument, addressed by Mr. Russell to the Court when the case was first argued. Before it was re argued, the professional career upon which he had entered in this his adopted State, and which had already given promise of distinguished success, was terminated by his death. A fitting tribute of respect was paid to his memory by his professional brethren of Baltimore, of which place he was a resident.

In a recent decision the Court of Appeals of Virginia gives a brief and clear statement of the doctrines which have been established there by a series of decisions, and in the course of their opinion they say: " The fact that creditors may be delayed or hindered is not of itself sufficient to vacate such a deed, if there is absence of *fraudulent intent.*   *   *   *   The fraudulent intent is denied by the grantors, and there is no proof except that arising from the face of the deed.   The Court cannot presume the fraud unless the terms of the instrument *preclude* any other inference.   As to the *cestuis que trust,* it is not pretended that they participated in any fraud. They were not consulted; and though, if the *fraudulent intent* clearly appeared on the face of the instrument, they would be affected by it if they claimed under it, the reservations on the face of the deed do not raise, under the doctrines of this Court, *an irresistible presumption of fraud,* which would of itself vacate the deed." *Dance, et al. vs. Seaman, et al.,* 11 *Grat. Rep.,* 778.

The Courts of that State never reject evidence extrinsic to the deed on the question of fraud, but in a very few cases they have found on the face of the deed that " irresistible presumption of fraud which would of itself vacate the deed." *Lang vs. Lee, et al.,* 3 *Rand.,* 410 ; *Sheppards vs. Turpin,* 3 *Grat.,* 373 ; *Spence vs. Bagwell, et al.,* 6 *Grat.,* 444.

This irresistible presumption has been found in deeds which reserved to the grantor *unlimited power to dispose of the property.*

These rare and extreme cases constitute nearly the entire class in which the Courts of Virginia have pronounced deeds of trust to be void, by reason of their own provisions merely.

Except in these extreme cases of mere sham deeds, the Courts of Virginia have refused to pronounce deeds of trust void, on account of any reservation of possession or interest to the grantor.   They have in a great variety of such cases, acted upon the view that neither such reservations, nor a provision for returning the surplus to the grantor, operates to

exempt any portion of his property from his debts. " The surplus is rightfully his property ; every thing not embraced by the conveyance belongs to him for the benefit of his creditors ; is liable for his debts. * * * * Such a deed may interpose obstacles to the legal remedies of creditors for an indefinite period of time. But the interest of the debtor would still be subject to his debts, and could be reached, if not by legal process, by a proceeding in chancery." *Dance, et al. vs. Seaman, et al.,* 11 *Grat.,* 781.

Thus the Court of Appeals has sustained deeds of trust which were not to be enforced by a sale for ten years; which conveyed, without schedule, household furniture, farming stock, &c., but not to be enforced for eighteen months; which conveyed land and not to be enforced for two years, and then only after notice of one hundred and twenty days; which conveyed land, and not to be enforced for five years, rents and profits in the meantime to be taken by the grantor; *Lewis, et al. vs. Caperton's Exec'r, et al.,* 8 *Grat.,* 148 ; which being made by an insolvent debtor, conveyed, among other things, cattle, household and kitchen furniture, and debts without specification or schedule, reserving possession for six months, and requiring creditors to release ; *Kevan, et al. vs. Branch,* 1 *Grat.* 274, which conveyed, among other things, growing crops, and not to be enforced for two years ; *Cochran vs. Paris, et al.,* 11 *Grat.,* 348, which conveyed land, slaves and crops cut and growing, and not to be enforced for two years, the profits in the meantime to go to the grantor, and the surplus to be paid to him ; *Dance, et al. vs. Seaman, et al.,* 11 *Grat.,* 778, which, being made by a failing firm, conveyed all their goods, debts, &c., reserving the possession for a time, with authority to sell the goods as agents of the trustee, &c., *Janney & Co. vs. Barnes, et al.,* 11 *Leigh,* 100, which, being made by a firm whose business was found unprofitable, conveyed all their goods, effects and credits, with a stipulation that the trustee should appoint one of the grantors his agent to carry on the business and replenish the stock, &c. *Marks, et al. vs. Hill, et al.,* 15 *Grat.,* 400.

In Virginia the distinction between general assignments and particular securities (so much insisted on elsewhere) does not affect the decision of this class of cases.

Some of the Judges have said that where releases are exacted the deed of trust must convey all the debtor's property; but it is added that a substantial compliance with this requirement, rebutting the presumption of intentional fraud, is sufficient. *Skipwith's Ex'r vs. Cunningham,* 8 *Leigh,* 271; *Phippen vs. Durham, et al.,* 8 *Grattan,* 457, 464, 475; *Wickham & Goshorn vs. Lewis Martin & Co.,* 13 *Grat.,* 427.

No deed has ever been vacated there on that ground, and some of the decisions already cited seem to disregard it.

Deeds of trust are commonly used in Virginia as well to secure particular debts on particular property as for general assignments. A form is prescribed for them in the Code which may be used in all cases indiscriminately.

Trustees under general assignments, as in other deeds of trust, are regarded as purchasers for value. *Wickham & Goshorn vs. Lewis Martin & Co.,* 13 *Grat.,* 427.

No arbitrary or artificial rule whatever has been established in Virginia by authoritative decision, under which deeds of trust or assignments in any form are held void, unless they are made with a *fraudulent purpose,* in which the beneficiaries are implicated.

In this case there is no evidence tending to show that the deed was made with a fraudulent intent or to connect the beneficiaries with any fraudulent purpose, unless, according to the doctrines which prevail in Virginia, the face of the deed itself raises an irresistible presumption of fraud; and this cannot be seriously pretended.

The provisions making preferences among creditors are sanctioned by cases already cited, and by *Burr's Executor, et al. vs. McDonald, et al.,* 3 *Grat.,* 236; *Marbury vs. Brooks,* 7 *Wheat.,* 556; *Brooks vs. Marbury,* 11 *Wheat.,* 78; *Brashear vs. West, et al.,* 7 *Pet. S. C. R.,* 608; *Tompkins vs. Wheeler,* 16 *Pet., S. C. R.,* 106.

The preferences given, so far from giving rise to a suspicion of unfairness, were necessary for the purposes of justice.

The provision for debts secured by endorsements of the directors, &c., was necessary to place directors on an equal footing with the stockholders, and those debts were as fairly entitled to preference as any others.

The provision reserving to the company the compensation for transporting express matter under existing contracts, was but an exception out of the general transfer of property, and is clearly sanctioned by authorities cited.

The provisions particularly assailed, are those which authorized the express company to retain possession of a *part* of the property conveyed from the 26th of September, the date of the deed, until the first day of the following November, about six weeks, unless the Board of Directors should surrender the possession sooner, and required the trustees during the same brief period, to pay out of the trust fund. a portion of the expense of carrying on the express business.

They were to pay " all debts now due or which shall become due from the said party of the first part to, its officers or employees for their *services as such*, on or before the 1st day of November next, or such *previous* time as the trustees are required to take possession of all the property," * * and " the balance of all debts for which the said party of the first part shall become liable, to any rail road companies for *transportation of express matter*, after the date of this deed, and on or before the 1st day of November next, after first applying to said debts the net proceeds accruing to said party of the first part from such transportation; such net proceeds being what may remain of the compensation for such transportation, after paying the current expenses of the business."

Now the object of these provisions is easily to be inferred from the nature of the company and its business, and from the general scope of the deed.   For the immediate security of the debts, (about $275,000) the trustees were put in instant possession of the credits assigned, (over $3,000,000) and tem-

porary possession was retained of horses, wagons, &c., neces-
sary for transportation, in order that existing engagements of
the company for transportation all over the country might be
fulfilled, and its business wound up without loss to creditors
or others interested in the trust fund.    For that purpose it
was necessary to retain officers and agents and to obtain the
services of rail road companies; but the services of officers,
agents and rail road companies could not be procured (after
the deed was made) unless payment was assured to them.
This arrangement was limited to a very brief period, and
might be terminated sooner if the board should find it un-
necessary to continue it.    Not only by this limit of time but
by the definite description of the objects of expenditure, it
was made certain that the amount which could thus be drawn
from the trust fund (if any) could not be large; while a sud-
den stoppage of the business for want of such provisions, must
have greatly increased the liabilities of the company and of
the trust fund.

How is it possible that provisions so obviously proper, and
even necessary, can raise an irresistible presumption of fraud?

That the board also hoped before the first of November
to make arrangements to continue the business appears, not
from the deed, but from an answer in the case; but how did
they hope to do this?    *By a prompt payment of all debts.*
Was this a fraudulent purpose?    If it were, the beneficiaries
under the deed, were in no way implicated in it.    As to the
ten months' clause, see *Pearson & Anderson, &c. vs. Rockhill
& Co.,* 4 *B. Monroe,* 296.

As to a receiver with extra-territorial powers: The case of
*The State vs. N. C. Railway Co.,* 18 *Md. Rep.,* 216, confirms
several views of the appellants.    It was a proceeding to carry
into effect a mortgage held to be valid, and covering a rail
road that extends through Maryland into another State.    The
corporation was chartered by Maryland as well as Pennsyl-
vania.    The Court said, in effect, that the corporation has
two domicils, each determined by the place in which it

was chartered : " that it must, for the purpose of justice, be treated as a separate corporation   *   *   a *domestic* legal entity to the extent of the government under which it acts, and as a *foreign* corporation as regards the other sources of its existence." Thus through a domestic corporation and a mortgage which was to be enforced (not annulled) the Court might have controlled property in the other State; but the Court spoke very cautiously as to the powers of the receiver even in such a case, and said " the consideration that the authority of this Court cannot extend beyond the territorial *limits of the State* in the exercise of its remedial power, does not deter it from acting in a case within its acknowledged jurisdiction, *to the verge of those limits.*"

In relation to the testimony of the lawyers in Virginia sustaining the deed, it is said : " Had the *facts* above stated been before the witnesses, we maintain that they would have pronounced the deed void on the principles they lay down." What does this mean ? That the witnesses on proof of facts outside of the deed would have found it fraudulent in fact ? That would be a strange question for " experts."

The appellee, Glenn, had no right to file a bill on behalf of himself and creditors generally, because his interest was different from and opposed to that of all other creditors. Their interest was to have the assets of the company distributed equally among all the creditors: he claimed to appropriate a part of them to himself under his attachment. *Hammond vs. Hammond,* 2 *Bland,* 306, 344, *and cases cited on page* 509.

*Charles Marshall* and *Thomas G. Pratt,* for the appellees :

The deed of trust is void, under the laws of Maryland, as against all the creditors of the National Express Company. The deed purports to be a conveyance of all the property of the Express Company for the benefit of its creditors, and creates certain preferences. The first reservation is for the use of the grantor, and enables it to enjoy its property under

Baltimore and Ohio Rail Road Company, *et al.* *vs.* Glenn. *et al.*

the title of the trustees, from the 20th of September until the 1st of November, following, and longer, if the trustees be not required to take possession.   The fifth reservation requires the trustees to pay out of the trust fund all debts that shall become due from the grantor to its officers and agents, from September 20th to November 1st, while it is thus using its property under the first reservation.   The eighth reservation requires the trustees to pay out of the trust funds all debts which the grantor may incur to rail road companies for transportation, from September 20th to November 1st, over and above the net receipts for such transportation.   And the same clause reserves to the grantor absolutely, all tolls and compensation for the transportation of express matter, not yet delivered to consignees, or not yet transported, although under existing contracts.   The effect of the fifth and eighth reservations taken together is, that all salaries of officers and agents, from September 1st until the trustees take possession, shall be paid from the trust estate, as also all dues to rail road companies for transportation during that period, after applying to the latter the net proceeds arising from such transportation, and as to all receipts *from existing contracts* for carriage, *the grantor shall have them absolutely, although the trust estate is charged with all the expenses incurred in executing these contracts.*

Such a deed, under the laws of this State, is absolutely fraudulent and void.   *Green and Trammell vs. Trieber,* 3 *Md. Rep.,* 28; *Sangston vs. Gaither,* 3 *Md. Rep.,* 51; *Malcolm, Trustee of Sprigg & Meseke, vs. Hodges,* 8 *Md. Rep.,* 418; *Inloes, Garn. of Turnbull & Co. vs. American Exchange Bank,* 11 *Md. Rep.,* 173; *Burrill on Assignments,* 168; *Quarles, et al. vs. Kerr, et al.,* 14 *Grat.* 58.

Nor does its validity depend on the insolvency of the grantor.   Such a deed, if made by a solvent person, placing all his property beyond the reach of his creditors is void. *Sangston vs. Gaither,* 3 *Md. Rep.,* 48.

But it is contended that, as the grantor is a Virginia corporation, the deed having been executed in Virginia, must be

construed by the laws of that State, and is valid under those laws. The first question presented is, whether this is a case for the application of the principle that the *lex loci contractus* shall determine the validity of the deed. It is in evidence that the National Express Company, previous to the assignment, had its principal office in the city of Baltimore, and exercised its franchise in this State, where the grantees also resided. *Speed vs. May*, 17 *Penn.*, 95.

The resolution under which the deed of trust was executed was passed in Baltimore. The debts due the appellees were contracted here, and much of the property of the company was here. Under these circumstances, it is contended that the company, exercising its franchise in Maryland, acquired a *habitat* here under our laws, just as a natural person acquires a residence, and that as to its property here at least, it must be regarded as a *quasi* Maryland corporation. *State vs. N. C. Railway Co.*, 18 *Md. Rep.*, 216; *Art.* 26, *sec.* 7, *Code of Pub. Gen'l Laws*.

Moreover, although the deed was executed in Virginia, the trusts were to be performed here, where the trustees resided. There can be no doubt that a citizen of another State or country, may contract with a citizen of this State, as to personal or other property located, or to be brought here, and that in such cases the law of this State will govern the contract. *Story, Conf. Laws*, *secs.* 76, 273, 279, 384, 524, 525; *Bank of Augusta vs. Earle*, 13 *Peters*, 519.

The application of the rule of comity, which gives effect to the law of the place of the contract, is not *stricti juris*.

But the rule of comity itself does not extend so far as to uphold this deed. A foreign law is inadmissible when it is contrary to the known policy, or injurious to the interests of this State, or contrary to its positive law. We maintain that the foreign law can only be applied in the Courts of this State, in the absence of any positive rule affirming, denying, or restraining the operation of any foreign law. *Black, et al. vs. Zacharie & Co.*, 3 *Howard*, 514; *Wilson & Co. vs. Carson*

& Co., *Garn. of Webb, Maxcy & Co.,* 12 *Md. Rep.* 54; *Gardner vs. Lewis,* 7 *Gill,* 392.

It will be found that all the Maryland cases in which the laws of other States have been applied in our Courts, are cases in which the contracts were upheld on the ground that *they did not contravene any law of Maryland.*   But this deed contravenes the policy of the State of Maryland as declared in many decisions, and is also opposed to the statute law of the State.   It falls within the provisions of the statute of 13 Elizabeth, ch. 5, which we maintain is a part of the statute law of Maryland.   *Green and Trammel vs. Treiber,* 3 *Md. Rep.,* 28; *Sangston vs. Gaither,* 3 *Md. Rep.,* 48; *Dashiel vs. The Attorney General,* 5 *H. & J.,* 401; *Kilty's Report of Statutes,* 234; *Quarles, et al. vs. Kerr, et al.,* 14 *Grattan,* 54; *Story Conf. of Laws,* sec. 383; *Malcolm, Trustee of Sprigg & Mescke, vs. Hodges,* 8 *Md. Rep.,* 418.

So that even if this deed be good by the laws of Virginia, the Court will not apply those laws so as to contravene the settled policy and the statute law of the State.   Nor will it be governed by the construction put on that statute by the Courts of Virginia.   But it is not conceded that this deed is good under the laws of Virginia.   It is true that the witnesses who were examined on that point, testify that the deed is good on its face.

It will be seen that the Court of Appeals of Virginia intimates that the Courts of that State had gone too far in upholding such deeds.   *Dance, et al. vs. Seaman, et al.,* 11 *Grat.,* 778.

And it will further appear from the cases cited by the appellants, and from the testimony of the witnesses, that in Virginia, the provisions of all deeds of trust are viewed by the Court in the light of the circumstances of the parties. *The Courts look at those circumstances to determine whether the provisions of the deed be or be not made with fraudulent intent.   Addington vs. Etheridge,* 12 *Grat.,* 438.

It will be seen that all the witnesses concur that the retention of an interest or control by the grantor over the property

conveyed by a trust deed, does not, *per se,* under the law of Virginia, invalidate the deed. But it will also be seen that these witnesses say that such a retention of control must be consistent with the avowed objects of the deed, and for the benefit of the creditors, and not for that of the grantor. It will also be seen that these witnesses had nothing before them to enable them to ascertain the object of the retention of possession by the grantor in this deed, except the deed itself, and the fact which they assumed from the character of the grantor's business, that the retention of possession was to enable the grantor to wind up its business with the least loss.

But the proof in this case is, that such was not the intent, but that the object was to enable the grantor to gain time to make some arrangements to resume business. This is apparent from the fact that the deed enables the grantor to make new contracts and continue its business as before the deed, until the 1st of November. And from the proceedings of the company after the deed was executed, which show that the company was making every effort to continue its business, and that even when it resolved to request the trustees to take possession, it was on the condition that they should postpone the sale of the property until the 10th December, 1866, and the very same resolution provided that if the company should pay its debts before that time, the trustees should deliver up the property.

It is contended, therefore, that the object of the retention of the possession by the company, was for its own advantage, and to give it time, or in other words, to delay its creditors, and that if such were its object, the Virginia law, as proved by the witnesses and laid down by the Courts, would avoid the deed. Moreover, the effect of allowing the company to continue a losing business, as this is found to have been, was in fact injurious to the estate. *Quarles, et al. vs. Kerr, et al.,* 14 *Grattan,* 58.

Had the facts above stated been before the witnesses, we maintain that they would have pronounced the deed void, on the principles they lay down.

As to the objection that the Court of Maryland cannot appoint a receiver with extra territorial powers, and the inconvenience that must result from appointing one, it is sufficient to refer to the case of *The State vs. The Northern Central Railway Company*, 18 *Md. Rep.*, 216. It is contended by the appellants that the appellee, Glenn, cannot proceed in equity, because he has issued an attachment. We contend that if the objection be tenable, the appellee should have been put to his election. *Gibson vs. Finley*, 4 *Md. Ch. Dec.*, 75, 79. But it is in evidence that the property taken under the attachments was insufficient to pay the appellee's claim, and that for the surplus, for which he held no security, he might proceed in Chancery by a creditor's bill, or by a bill in his own behalf, to impeach the deed of trust. The debt due the appellee, Glenn, was $21,500. The property taken under the attachments is admitted to have been insufficient to pay this amount. But in addition to this indebtedness, the same appellee was and is liable on two notes of $13,000 and $12,000, which have not yet been paid. The appellee had a right to proceed as a general creditor for the balance of his debt not covered by the attachments, and for that on which he was responsible as endorser. *Williams, et al. vs. Banks, et al.*, 11 *Md. Rep.*, 198, 242; *Hammond vs. Hammond*, 2 *Bland*, 345.

It is also contended that the deed of trust was a fraud upon the rights of the appellee, under his agreement with the company of August 9th, 1866. As to the preference given to the Baltimore and Ohio Rail Road Company and the Bank of Commerce, August 9th, 1866, which is insisted upon in the answer of the Baltimore and Ohio Rail Road Company, we contend that it has nothing to do with the case. The deed of trust goes beyond that preference, and prefers the rail road company and Bank out of the general assets of the grantor.

The rail road company and bank may insist upon their rights under the resolution of August 9th, when their acceptance of this resolution is proved, after the deed is vacated.

We also contend that this bill may be treated as the bill of Glenn alone, no other complainant joining with him, and that other creditors, such as the Philadelphia Rail Road Company and B. F. Ficklin, may become parties and have the benefit of the proceedings. *Hammond vs. Hammond*, 2 *Bland*, 345.

Assuming the deed to be void, the Court could do nothing but appoint a receiver. *State vs. N. C. Railway Co.*, 18 *Md. Rep.*, 216. So far we have said very little on the subject of the law of Virginia as applicable to this case, not deeming it very material, but inasmuch as it has been very earnestly insisted by the other side that the deed of trust is valid under the law of that State, it is proper that we should present our views to the Court upon that branch of the argument. The law of Virginia unquestionably permits a debtor, by a *bona fide* deed, to prefer one creditor to another. The law of Maryland is the same, and we do not object to this deed because it creates preferences. But the law of Virginia requires that in a deed of this kind, professing to devote all the property of the debtor to the payment of his debts, there shall be a *bona fide* appropriation of it to that purpose, and that the debtor shall not, under color of such legal purpose, place his property beyond the reach of his creditors, while his actual purpose is something different, and designed for his own advantage. It makes no difference whether it be the honest purpose of the debtor *ultimately* to pay all his debts. It is not necessary that he shall design to cheat and defraud his creditors. It is sufficient to invalidate the deed, if it be found that its design is to procure a coerced extension for the debtor, to prevent his existing creditors from compelling payment of their just debts, for any time, however short, with a view to enable the debtor, during that time, to use his property, under the protection of the deed, although with the honest expectation of being able, by such use, to pay all his debts, and save himself.

The Courts of that State have decided that the deed must be " in truth designed as a *bona fide* indemnity for creditors, and not as a mask under which the debtor might carry on his business for his own emolument, while professing to make a surrender of his whole property to his creditors." *Sheppards vs. Turpin*, 3 *Grat.*, 402 ; *Lang vs. Lee, et al.*, 3 *Randolph*, 422, 427, 429, 432 ; *Addington vs. Etheridge*, 12 *Grat.*, 437 ; *Marks, et al. vs. Hill, et al.*, 15 *Grattan*, 411, 413. The intention of the grantor, according to the Virginia decisions, may be gathered from the provisions of the deed itself, or shown by extraneous evidence. *Addington vs. Etheridge*, 12 *Grat.*, 438 ; *Dance, et al. vs. Seaman, et al.*, 11 *Grat.*, 784. The testimony of the witnesses and the decisions of the Courts of Virginia, concur on the point, that if the validity of the deed is to be decided, *from its own provisions*, the deed is void, unless those provisions show a *bona fide* dedication of the grantor's property to the payment of its debts, that being the avowed purpose of the deed. It must contain no provision inconsistent with that object. *Marks, et al. vs. Hill, et al.*, 15 *Grat.*, 408, &c. The witnesses then proceed to interpret the provisions of the deed to which objection is made, *according to their own views of the object and intent of those provisions*, and being unable to perceive in those provisions, any intent inconsistent with the avowed object of the deed, *i. e.*, an honest dedication of the property of the grantor to the payment of its debts, pronounce that the deed is in their opinion valid.

Two things must be borne in mind in considering this testimony.

1st. That the witnesses assume to ascertain *the meaning* of the objectionable features of the deed, for unless they are correct in their views of that meaning, their testimony does not sustain the deed.

2d. That even if this Court should decide that *they* are correct in their view of the intent of these provisions as

gathered from the deed itself, yet if extraneous facts, to which they admit reference may be made under the law of Virginia, to *show the actual intent of provisions seemingly legal,* would show that the intent in this case of those provisions, was not what it appears to be on the face of the deed, and those facts were not made known to the witnesses when examined, this Court may consider their testimony in the light of those facts, now made known to it, and from them in connection with the provisions of the deed, ascertain the actual intent of the grantor.

We must then consider in the first place, whether the witnesses have properly interpreted the object of the objectionable provisions of the deed.    That is not a question of Virginia law, but a question of the interpretation of language.    We consider that if the retention of possession by the grantor, and the power to charge the estate with debts incurred by the grantor during such retention of possession, is, *on the face of the deed,* designed for the benefit of the *cestuis que trust,* the case of *Marks, et al. vs. Hill, et al.,* 15 *Grat.,* 408, and the other cases cited by the appellants, show that such a retention and power, are not inconsistent with the avowed objects of the deed, and do not invalidate it *on its face.*    But we contend that *on the face of the deed,* the witnesses are mistaken in their construction.    We maintain that the power of control reserved by the grantor in this case, was not for the benefit of the trust estate, was not in accordance with the avowed object of the deed, but went beyond that object, and gave the grantor, under cover of the deed, the power to continue a losing business at the expense and risk of its creditors.    The deed provides not only for finishing incomplete contracts for transportation, which it might legally have done, but it provides for new contracts to be made, new risks to be incurred *after the execution of the deed, at the expense of the estate, and at the risk of the creditors.*    Nay, more, it shows that the grantor expected that these new contracts would be

attended with loss, for it provides that after applying the receipts therefrom to the payment of the expenses incurred, the trustees shall pay the balance of debt so incurred, out of the other property of the estate, *before paying its debts* at the date of the deed, with two exceptions.

If it were necessary, and to the interests of the creditors, as the witnesses think, that the grantor should reserve the right to complete existing contracts of transportation, was it necessary for those purposes, that the grantor should make new contracts, not connected with winding up the estate to advantage, but which it was expected as appears by the deed itself, would end in loss?

This provision, it will be seen, is wholly overlooked by the witnesses. They *assume* that the object of the reservation was for the benefit of the *cestuis que trust,* but they fail to see that the reserved power extended to the creation of new debts, *not* necessary to winding up the trust, and positively injurious to the interests of the creditors. If this be true, the following cases apply with full force. *Lang vs. Lee, et al.,* 3 *Rand.,* 410, 423, 424; *Spence vs. Bagwell, et al.,* 6 *Grat.,* 444, *as explained in Dance, et al. vs. Seaman, et al.,* 11 *Grat.,* 783; *Addington vs. Etheridge,* 12 *Grat.,* 436. The authority of these cases is disputed by the appellants, but they are sustained by the case of *Dance, et al. vs. Seaman, et al.,* 11 *Grat.,* 778, and in the latest case of all, *Marks, et al. vs. Hill, et al.,* 15 *Grat.,* 400.

But if there be a reasonable doubt as to the intent of the grantor in this provision, on the face of the deed, it is removed by the extraneous evidence to which the witnesses had no access, but to which they testify the Court may resort. That evidence abundantly shows that the grantor intended by this deed, not to devote its property honestly and *bona fide* to its creditors, as avowed in the deed, but, to get time, to *delay its creditors, to hinder them in asserting their rights,* in order that the grantor might be enabled to make another

effort, at their risk and expense, to retrieve its credit, and re-establish its business. The proceedings of the grantor, after making the deed of trust, remove all doubt upon this point. And if such were the object of the deed, however honest may have been the expectation of success, the deed is a deed to hinder and delay creditors, it does coerce extension, it is inconsistent with the avowed object of the grantor, is fraudulent in law, and void; void in Virginia, void everywhere. The *intent* to delay is all that the Court looks at, without regard to the actual length of the delay, whether long or short. *Dance, et al. vs. Seamen, et al.*, 11 *Grat.*, 782; *Quarles, et al. vs. Kerr, et al.*, 14 *Grat.*, 58.

The cases cited to sustain the deed, will be found not to be general deeds of trust for the benefit of all the creditors of the grantor, but specific liens in favor of certain creditors upon certain property, in the nature of mortgages. In considering the effect of any provision of a deed of trust, regard must of necessity be had to the object of the deed, and provisions may be entirely legal in a deed of one kind, that would invalidate a deed of a different kind. *Lang vs. Lee, et al.*, 3 *Rand.*, 434; *Dance, et al. vs. Seaman, et al.*, 11 *Grat.*, 778.

STEWART, J., delivered the opinion of this Court.

The able argument of the counsel, on both sides, in this cause, has been mainly directed to the consideration of the validity and effect of the deed of the 20th September, 1866, made by the Express Company to the trustees. The invalidity of this instrument is the sole reliance of the complainant, upon which all the other proceedings depend. Our conclusion upon that proposition will dispose of this appeal. The question is one of much importance, and having been re-argued, has been examined with more than ordinary care. The bill of complaint, the deed itself, the agreement of counsel filed, the proceedings and testimony, all represent, that this Express Company is a body politic and corporate of the

State of Virginia. The deed purports to have been signed by Jos. E. Johnston, President of the Company, by virtue of authority, vested in him by an order and resolution of the Board of Directors of the Company, and that he affixed the common seal of said corporation to the deed, as the act of the corporation. The agreement filed further admits, that the office of the President of the Company has been kept at Richmond; that the deed was executed there and admitted to record, according to the law of Virginia. It further admits, that at the time of the execution of the deed, and for several months previously, the company had an office in the city of Baltimore, at which the offices of its Treasurer and General Superintendent were kept, and a large amount of the general business transacted.

The grantor, being a corporation of the State of Virginia, its domicil is there. In the case of *The Bank of Augusta vs. Earle*, 13 *Peters*, 519, Chief Justice TANEY states: "that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists by force of the law, and where that ceases to operate, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty."

It was urged, in the argument for the appellees, that the company by transacting business, having an office, and its Treasurer and Superintendent here, acquired a habitation at the same place. This could make no difference, if not only those offices, but the office of the President also had been here. They were but the agencies of the corporation. In the same case, *Bank of Augusta vs. Earle*, the doctrine is plainly announced, that "although it (the corporation) must live in that State only, (the State from which its charter is derived) there is no insuperable objection to its power of contracting in another. Natural persons, through the intervention of agents, are continually making contracts, where they do not reside, and what greater objection can there be to an artifi-

cial person, by its agents, to make a contract within the scope of its limited powers, in a sovereignty in which it does not reside; provided such contracts are permitted to be made by the laws of the place." Art. 75, secs. 99 to 104, Art. 88, secs. 33 to 44, of the Code of Public General Laws, provide for enforcing process against the agents of a corporation having existence beyond the State, but holding and exercising franchises therein, thus recognizing their authority to transact business here. Natural persons having no residence here, may have dealings through their agents, but that gives them no domicil here, much less a corporation, whose corporate franchises being against common right, are construed more strictly; natural persons may change their domicil, not so with corporations, who have a stationary habitation and can only have transactions, from their home, through their agents. Personal and individual rights are original, whilst the powers of a corporation are derivative and prescribed by their charters.

The authority in 18 *Md. Rep.*, 213, *State vs. Northern Central Railway Company,* relied upon by the appellees to sustain their view, that the company doing business here, must be considered as having a domicil here, we think sustains our conclusion. In that case the corporation held its existence by two charters from different States, or its existence in part from a charter of another State. " Such a corporation must, for the purposes of justice, be treated as a separate corporation by the Courts of each government, from which it derives its being, that is, as a domestic legal entity, to the extent of the government under which it acts, and as a foreign corporation, as regards the other sources of its existence." This is in accordance with the principle we have stated, because having two charters, it is as to each distinct, and is treated in each State, giving it being, as a legal entity. If this corporation held a charter from the State of Maryland, it would have a domicil here to the extent of that authority. But deriving its charter from Virginia alone, that State must be

Baltimore and Ohio Rail Road Company, *et al. vs.* Glenn, *et al.*

be esteemed its domicil exclusively. It could not reside here and in Virginia at the same time under the one charter.

The deed in question having been made in the State of Virginia, and by a corporation, created by the laws of that State, its validity must depend upon those laws. "It is a general principle admitting of few exceptions, that in construing contracts made in a foreign country, the Courts are governed by the *lex loci* as to the essence of the contract; that is the rights acquired, and the obligations created by it." *De Sobry vs. De Laistre*, 2 *H. & J.*, 191; *Trasher vs. Everhart*, 3 *G. & J.*, 244. The rule of comity, where the *lex loci* is foreign, adopts the law of the country where the contract is made, in placing a construction upon it. They look to the foreign law to ascertain the true character of the contract, that efficacy may be given to its obligations between the parties, unless *contra bonos mores*, or against some positive law of their own. This is necessarily the rule, otherwise, no reasonable interpretation could be given to such contract. It can have no validity, except conformable to the law where made. It must have a legal origin. "No right can be derived under any contract, made in opposition to the law where it is made." *Hall vs. Mullin*, 5 *H. & J.*, 193.

"Courts of justice always expound and execute it (the contract) according to the laws of the place where made." *Bank of Augusta vs. Earle*, 13 *Peters*, 588. Judge STORY, in his Conflict of Laws, says: "in the silence of any rule affirming, denying or restraining the operation of foreign laws, Courts of justice presume the tacit adoption of them by their own government, unless repugnant to its policy or interest. It is not the comity of the Courts, but of the nation, which is administered in the same way, and guided by the same reasoning, by which all other principles of municipal law are ascertained." In other words, the universal interests of all enlightened nations prescribe this as common law to be administered by their Courts.

If this deed is a legal instrument in Virginia, where it was made, it is so here, unless it violates good morals or is repugnant to some law or policy of this State. If it is fraudulent and void, according to the law of Virginia, the fraud attaches to it here and vitiates it. Is the recognition of the validity of this deed obnoxious to any law or policy of this State?

We are not aware of any law or rule of construction, which prohibits the enforcement of a contract not made in this State, according to the law of the place where it was made, although our citizens, from reasons of State policy, may not be permitted to make a similar contract here. A different rule would be to attempt the enforcement of our local policy upon all other people, and recognize no contract not conformable to our peculiar views.

Transfers of personal property within our limits, belonging to parties abroad, may be made according to the foreign law, where our own citizens, in transferring similar property, are required to conform to our laws regulating such transfers. *Wilson & Co. vs. Carson & Co., Garn.*, 12 *Md. Rep.*, 54; *Houston vs. Nowland*, 7 *G. & J.*, 480. The case of *Gardner vs. Lewis*, 7 *Gill*, 377, was between citizens of Maryland, who had gone outside of the State and made a contract, and there was no evidence of what was the foreign law, and therefore the law of Maryland was the only one to be applied. In *Green and Trammell vs. Treiber*, 3 *Md. Rep.*, 28, the deed was set aside as being contrary to the law of Maryland, having been executed by parties in the State of Virginia, but there was no evidence of what was the law of that State. It is not material in this enquiry to define what would be our construction of such a deed as this, if made here according to our views of the statute of 13 Elizabeth, ch. 5, because, having been made in Virginia by a corporation having its domicil there, its validity must be determined according to that law. The deed has been assailed by the bill of complaint, as *fraudulent upon its face*, and because of its alleged illegal reservations and preferences. Because it reserves a use to the

grantor, to hold the property under the title of the trustees, from the 20th of September to the 1st of November, ensuing, if the trustees be not required to take possession. Because it requires the trustees to pay out of the trust fund, all debts that shall become due from the grantor to its officers and agents for a like period. Because it requires the Trustees to pay out of the trust funds, all debts which the grantor may incur to rail road companies, for transportation from September 20th to November 1st, over and above the net receipts for such transportation. Because it reserves to the grantor all tolls and compensation for the transportation of express matter not yet delivered to consignees, or not yet transported under existing contracts.

These are the principal objections made, and which are embraced by the 1st, 5th and 8th reservations and clauses of the deed. Are these reservations fatal to the validity of the deed according to the Virginia Law?

That law is a fact to be proved in our Courts, as other facts; if unwritten, by the testimony of *experts;* if statutory, by the law itself or exemplified copy. *Gardner vs. Lewis,* 7 *Gill,* 377; *De Sobry vs. De Laistre,* 2 *H & J.,* 191.

As to what is the Virginia law, applicable to the character of this deed, it seems assumed we are confined to the testimony of the *experts,* introduced under the commission, so far as the Baltimore and Ohio Rail Road Company is concerned, because they are not parties to the agreement, admitting resort to other sources. It is not necessary to decide as to the correctness of this assumption, because there is no conflict between the testimony of the witnesses and the reported decisions of the Virginia Courts. These witnesses, the *experts,* Grattan, Steger, Carrington, Page, Imboden, Baldwin and Hunter, eminent jurists, and experienced in the law of Virginia, testify that under that law the deed is valid, and its provisions would be recognized as legal for the purposes set forth in it. Such is the uniform tenor of this evidence, which is conclusive, as to the validity of this deed under the Virginia law, outside of the agreement in the cause.

Besides this testimony of the *experts*, the agreement of the trustees, the Express company and the complainant, requires us to resort to the decisions of the Courts, or opinions of Judges of Virginia, reported in any printed book, &c., to ascertain the law of that State pertinent to this question. From the examination we have given to the reports of the Virginia Courts, construing this statute of 13th Elizabeth, its construction has undergone modifications in their Courts, very analagous to the changes which have taken place in the Courts of other States, and in England, since the trial of *Twyne*, who was one of the first victims to the penal provisions of that law.

The Court of Appeals of the State of Virginia, in the case of *Davis vs. Turner,* 4 *Grattan,* announce very distinctly a change in their construction of this statute of 13th Elizabeth, contrary to a series of prior decisions. Judge BALDWIN "expressed his opinion against the doctrine that the non delivery of possession on a sale, is in itself, in all cases, conclusive evidence of fraud, and against the principle that the inconsistency of the possession, with the terms and effect of the deed, is also conclusive evidence of fraud, holding that the fraud, contemplated by the statute, is to be found in the ,falsehood of the transaction." Upon a review of the Virginia cases, he added " that it seems now conceded, on all hands, the continued possession of the vendor after an absolute sale, is open to explanation."

Judge CABELL stated " that an entire change had taken place in his views, that he was now entirely convinced of the correctness of the modern English decisions."

In the later case of *Forkner vs. Stewart,* 6 *Grat.,* 198, 204, the Court " declared that the proper instruction to be given to the jury was, that if it appeared to them that an absolute sale had been made, but that the possession did not accompany such sale, but remained with the vendor, such retention of possession was *prima facie* evidence of fraud, but not *conclusive,* and could be rebutted by proof of the fairness and good faith of the transaction."

In the later case of *Dance vs. Seaman*, 11 *Grat.*, 778, much relied upon by appellees' counsel, the Court say: "the fact that creditors may be delayed, is not of itself sufficient to vacate a deed, if there is absence of *fraudulent intent.* Every conveyance to trustees interposes obstacles in the way of the legal remedies of creditors, and may, to that extent, be said to hinder creditors. The fraudulent intent is denied by the grantor, and there is no proof, except that arising from the *face of the deed.* That the Court cannot presume the fraud, unless the terms of the instrument preclude any other inference. That the reservation of an interest in the property, by postponing the time of sale, or directing a sale on a credit, &c., do not, of themselves, furnish evidence of fraudulent intent. That such questions have been settled by a series of adjudications in that Court; that it would disturb titles, if the principle, heretofore established by the practice of the Courts, were now to be questioned; that, if inconvenience result from the construction given to the statute, the correction should be administered by the law-making power."

Nor does the case of *Quarles vs. Kerr*, 14 *Grat.*, 54, 58, referred to by appellees' counsel, sustain their theory. The deed in that case was set aside, owing to the circumstances of that case, the Court saying "that a delay of two years was equivalent to giving up all claim to the property; that the Courts in Virginia have gone as far, or farther to sustain the owner's dominion; that the owner may, in good faith, convey his property, or a part of it, to secure the payment of his debts, may postpone for a reasonable time, (to be judged of in each case,) the period for executing the powers of the conveyance," &c.

From the purport of these decisions, we do not perceive that the law of Virginia is different, from the exposition of it, by the testimony of the *experts.* The Virginia doctrine, as to the construction of this celebrated statute of 13 Elizabeth, ch. 5, amounts to this, that the presumption of fraud to be deduced *from the face of a deed,* where its provisions may

Baltimore and Ohio Rail Road Company, *et al. vs.* Glenn, *et al.*

be explained as consistent with good faith, is discountenanced if not exploded.

The impeached instrument is valid, or otherwise, according to the evidence of its fairness or fraud; the purpose—the fraudulent intent—is the subject of proof, and not necessarily to be inferred, by any fixed and inflexible rule of law; that the Courts will not, as a general rule, pronounce *from the face or terms of a deed* that it is fraudulent, but permit the fullest investigation to be made by proof as to any fraudulent, intent, or otherwise, admitting evidence *dehors,* to determine the fraud or honesty of purpose, thus giving what they appear to consider a more reasonable construction of the statute.

From all the testimony, we conclude the law of Virginia does not invalidate this deed from *its face* or *provisions,* and there is no evidence *aliunde* to authorize this Court to declare it invalid. Differing from the Circuit Court, in its construction of this deed, we reverse the orders of that Court, from which appeals have been taken; the injunction must be dissolved and the cause remanded for further proceedings in the Court below to accord with this reversal. The validity of the sales made by the receiver, in the discharge of his duty as an officer of that Court, is not to be affected by this decision, nor his accountability for the proceeds of sale, or other funds remaining in his hands, but he may be required to account with the trustees, in the further proceedings in the Court below. The costs of these appeals to be paid out of the funds in the hands of the receiver.

*Orders reversed, injunction dissolved*
*and cause remanded.*

(Decided 25th February, 1868.)